EXPERT REPORT OF DR. JAMES J. LYNCH

AMADOR, et al. v. ANDREWS, et al.

(STEPHANIE DAWSON)

- CONFIDENTIAL -

JAMES J. LYNCH, M.D.
142 JORALEMON STREET
BROOKLYN, N.Y. 11201

(718) 858-3200

December 1, 2009

RE: STEPHANIE DAWSON

I am a qualified psychiatrist who has testified previously on matters pertaining to the diagnosis, treatment and prognosis of mental illness. I have been licensed to practice medicine in the State of New York since 1991 and have been board certified by the American Academy of Psychiatry and Neurology since 1996. I am currently in the practice of psychiatry at the above location and have worked at various locations including St. Vincent's Hospital, the New York State Psychiatric Institute and the New York City Human Resources Administration in the Office of Health and Mental Health Services.

Over the past several years, I have been appointed on approximately one hundred cases where I was asked to conduct an Independent Psychiatric Examination. These appointments usually were in the matters of Guardianship for allegedly incapacitated patients. I have also been asked by various attorneys to conduct psychiatric examinations of their clients, usually as part of Guardianship evaluations. In the interest of time and the amount of work involved, I have not listed all these cases for this report, but, if the Court so desires, I can certainly review all my records and provide this documentation for review.

On November 18, 2009, I conducted a Comprehensive Psychiatric Assessment of Stephanie Dawson. The interview of this 48 year old, black woman, took place at the law offices of Debevoise & Plimpton. This law firm serves as Ms. Dawson's counsel in a lawsuit against a New York State Correction Officer. Present during the evaluation was one of the client's attorneys, Jennae Swiergula. The interview took place over approximately ninety minutes with a short break in between. I was asked to evaluate Ms. Dawson by Walter L. Rich, Esq. of the law firm, Kaminsky & Rich. Mr. Rich represents the Correction Officer in this case, where he is the Defendant and Ms. Dawson, the Plaintiff. Mr. Rich also provided me documents regarding this lawsuit and regarding Ms. Dawson's treatment prior to my interview.

- CONFIDENTIAL -

JAMES J. LYNCH, M.D.
142 JORALEMON STREET
BROOKLYN, N.Y. 11201
(718) 858-3200

2.

RE: STEPHANIE DAWSON

The documents I reviewed were as follows: (1) Hand written notes reportedly done by Dr. Denise Hien relating to her interview of Ms. Stephanie Dawson (2) Expert report of Dr. Denise Hien (3) Transcript of the deposition of Ms. Dawson conducted March 22, 2006 (4) Ms. Dawson's medical records from the Office of Mental Health (5) An investigative report from the New York State Inspector General's Office (6) Confidential Order from the United States District Court regarding this case (7) Inmate information from the Department of Correctional Services.

I have not received payment in advance in this matter but I expect to bill for my services at the rate of $300.00 per hour for a review of records, legal consultation, preparation of report and testimony.

At the start of the interview, I explained to Ms. Dawson that I had been hired by the Correction Officer's attorney. I also told her that this was not a confidential examination as I would be required to write a report and possibly testify in court about this examination. Ms. Dawson stated she would speak with me. I understood I was speaking with Ms. Dawson as she was addressed in this way by the attorney present and also by another attorney, Alison Mikkor, who is also serving as her counsel.

From all these sources of information, I was able to learn that Ms. Dawson is engaged in a lawsuit against a Correction Officer identified as Frederick Brenyah because of an allegation that this officer sexually assaulted Ms. Dawson while she was a prisoner and that this caused her harm.

In speaking with Ms. Dawson, I was able to learn many details about her previous life as well as the allegation she made. For example, I learned that Ms. Dawson is currently living in a rented room in upper Manhattan. She has been employed as a parking aide for a film production company on a part-time basis since 2006. She explained she was born in New Orleans and raised in Florida. She also told me she has lived in New York City for the past twenty-five years. Her father, Stanford Dawson is deceased. Her mother, Shirley, who was divorced

- CONFIDENTIAL -

JAMES J. LYNCH, M.D.
142 JORALEMON STREET
BROOKLYN, N.Y. 11201

(718) 858-3200

3.

RE: STEPHANIE DAWSON

from Stanford, lives in Florida with Ms. Dawson's daughter, Shirlena. Shirlena is approximately sixteen years of age. Ms. Dawson's mother also raised her son who was born in 1983. Unfortunately, this young man, Darris, was killed while serving in the United States Military on September 24, 2008.

Ms. Dawson is the second of five children born to her father. The first two, her older brother, Stanford, and Ms. Dawson were from Stanford and Shirley. Three younger children were born from two other relationships that her father engaged in. Ms. Dawson stated there is no family history of psychiatric problems, alcoholism or addictions. She informed me she graduated in the Class of 1979 from Pensacola Florida High School. Upon graduation, she worked in a Burger King and became involved with Darryl Mathis. They never married but Darryl was Darris's father. The couple resided in Texas for a short time where Ms. Dawson took college courses. Unfortunately, the relationship ended after Ms. Dawson moved back to Florida. Shortly thereafter, Ms. Dawson moved to New York City to live with her father bringing her son with her. She had previously lived with her father in New York City at the age of fourteen.

Ms. Dawson admitted she began to use Marijuana at age fourteen. She began to use Cocaine and proceeded to Crack use when she was approximately 27 or 28 years of age. In the early 1990's, while working for Montefiore Hospital on Riker's Island, as a medical records clerk, she allegedly became involved with guards and was arrested for bringing drugs into the jail. She was convicted of Conspiracy with Attempt to Distribute and served ten months at Bedford Hills from September 1992 until June 1993. This is where her daughter was born. Of note, Ms. Dawson reportedly sent her daughter to be raised by her mother as she had previously sent her son. Between 1993 and 1999, there were further illegal difficulties. She was arrested and held on bail for six months in 1996 but her case was dropped and she was released. She was also arrested for soliciting in 1996 and for gambling in 1998. Ms. Dawson explained she was

- CONFIDENTIAL -

JAMES J. LYNCH, M.D.
142 JORALEMON STREET
BROOKLYN, N.Y. 11201

(718) 858-3200

4.

RE: STEPHANIE DAWSON

trying to support her habit. In 1999, she was arrested for selling drugs to an undercover officer, convicted and sentenced to three to six years. As part of a drug treatment program, she was ordered to attend Daytop in Manhattan, first as an Outpatient but then as an Inpatient because of "dirty urines". Ms. Dawson chose to be jailed in 2001 rather than attend the Inpatient program. Ms. Dawson went into the prison system in 2001 and got out in May 2003.

In regards to the allegation of harm sustained as a result of her interaction with Officer Brenyah, Ms. Dawson states this occurred approximately during the period of February 2003. She stated she was attending a drug treatment program inside the prison. On the morning after the alleged assault, Ms. Dawson informed a Catholic nun who worked at the prison. She also stated that she contacted Legal Aid in their Prisoner Rights Program. An investigator came and Ms. Dawson had to undergo medical testing, including completing a rape kit. Ms. Dawson does not recall what happened to the officer involved but is aware that she testified at a criminal trial regarding her allegations. She told me she did not understand how a jury could find him Not Guilty explaining, "People don't make stuff up unless they are crazy".

Ms. Dawson explained that she is currently involved with her boyfriend and that this relationship has continued for the past fourteen years. However, she stated her boyfriend does not know about the lawsuit or about the allegation that she had been harmed by Officer Brenyah. Ms. Dawson stated that as a result of the incident with Officer Brenyah, her intimate life diminished. She told me that after she left prison she did not want to be touched in any way. However, she believes this has become less of a concern over time.

Ms. Dawson stated she attended counseling in the prison after the allegation was made. She told me she did not attend any further counseling after she got out of prison as she did not have the resources. At the present time, she has been attending a Bereavement Group at the VA Center in Manhattan and that this has been ongoing for the past three months. As a result of attending the Bereavement Group, Ms. Dawson states, "I have learned it all goes back to childhood".

- CONFIDENTIAL -

JAMES J. LYNCH, M.D.
147 JORALEMON STREET
BROOKLYN, N.Y. 11201

(718) 858-3200

RE: STEPHANIE DAWSON

5.

I asked Ms. Dawson if there could be any other explanation as to what occurred with Officer Brenyah. Ms. Dawson answered back, "Are you asking me if this is true?" She then stated, "I can picture it happening. The picture is clear and will never go away". Ms. Dawson concluded, "This is a huge national crime. Some people might make it up but I can't imagine it". She also stated that she believed that the Officer involved had been doing it all the time in the way he allegedly assaulted her. Ms. Dawson told me that she had no reason to lie about what had occurred. She stated, "I was not looking for a way out".

Ms. Dawson relates that she has significant medical concerns as a result of the alleged assault by Officer Brenyah. She stated that she gets tested for HIV every six months at Harlem Hospital. She provided me with the name of her physician there, Dr. Michnit. When I asked why she continues to get HIV testing approximately six years after the alleged assault, Ms. Dawson stated she believed she was still at risk. When I asked if the physician ever questioned her about why she was getting HIV testing so frequently, Ms. Dawson stated she had never told the doctor about the alleged assault by Officer Brenyah and could just ask the doctor for the testing and he would complete this.

At the present time, Ms. Dawson states she is not taking any medication. She believes she is eating well and sleeping well. She has a future plan, hoping to move out of New York City in the coming years with her boyfriend. As for marrying him, she stated, "I am not ready". She states the relationship is going well at the present time and that they go out, attend movies, eat at restaurants and exercise together. As for her use of drugs, Ms. Dawson believes, "I am not going to relapse". She also told me, "I got myself together now. I like my life now".

As for my concern about re-experiencing the trauma of the alleged incident by engaging in a lawsuit, Ms. Dawson answered, "I don't know if I will ever get over it". She then went on to say, "It is not about the money; I don't want it to happen to other people". She similarly pointed out concern about her son who reportedly was a victim of homicide by another soldier,

- CONFIDENTIAL -

JAMES J. LYNCH, M.D.
142 JORALEMON STREET
BROOKLYN, N.Y. 11201

(718) 858-3200

RE: STEPHANIE DAWSON

6.

saying, "I am not living for the money; I want justice". Toward the end of the interview, Ms. Dawson went back to her concerns about Officer Brenyah. She told me that he had to get justice, "just like Mr. Madoff". She said if she had the power, she, "would have avoided him". But she also stated she was afraid of yelling to prevent the alleged assault as Officer Brenyah could say she was escaping.

On Mental Status Exam, Ms. Dawson presents as a middle-aged, African American woman who was polite, engaging and cooperative. Although tearful at times during the interview, she did not display any severe distress. I was not able to observe any signs of depression, anxiety, psychosis or other psychological symptoms. Cognitive exam was intact. Insight and judgment were unremarkable.

Diagnosis: There are no signs of an active psychiatric diagnosis at present.

In summary, Stephanie Dawson presents a very complicated story with a tumultuous, chaotic life. She has experienced significant Cocaine abuse that likely led to her legal difficulties and incarceration. She was separated from her children and had to rely on her mother to raise them. She engaged in drug selling, prostitution and gambling to support herself and to support her Cocaine use. Fortunately, there has been no further drug use since she left jail in May 2003. She is working, involved in a relationship, is in frequent contact with her daughter and has a positive outlook for the present and future.

Ms. Dawson believes she was harmed as a result of the alleged sexual assault by Officer Brenyah. During my evaluation, I could not find any evidence of a psychological disorder being active at the present time. She was diagnosed as having, Rule/Out Acute Stress Disorder going back to a time shortly after the alleged incident occurred with Officer Brenyah. She reportedly engaged in counseling for a short period of time but that this ended prior to her leaving jail a few months later.

- CONFIDENTIAL -

JAMES J. LYNCH, M.D.
142 JORALEMON STREET
BROOKLYN, N.Y. 11201

(718) 858-2200

7.

RE: STEPHANIE DAWSON

As for the allegation of the abuse that took place, I could not say with any certainty as to the truthfulness of Ms. Dawson's account. But it appears, from a psychological point of view, that there was no obvious injury sustained at that time and continuing on to the present date. Ms. Dawson is aware that there is active litigation regarding her claim and recognizes that it is very difficult to determine whether her allegation is true or false. She asked that her claim be believed as there is no other explanation for making such a statement. Unfortunately, it seems to me the account she presents can never be proven in any satisfactory way to Ms. Dawson.

Fortunately, Ms. Dawson is happy with her present life and hopeful for the future.

I will gladly testify to the findings in this report and will offer my services to assist the attorneys and the court in understanding this difficult matter.

JAMES J. LYNCH, M.D.

- CONFIDENTIAL -